case for appellant, please make your appearance and proceed. Good morning, I'm Josh Lee from the Colorado Federal Public Defender's Office and I represent Mr. Tony. This case should be remanded for resentencing because the district court miscalculated the guidelines range. The court imposed two separate sentencing increases based on Mr. Tony's obstruction of justice when the guidelines only authorized one. The court first increased the guidelines range for Mr. Tony's manslaughter offense under Section 3C1.1 based on his obstruction of justice. That was correct. But the court then further increased Mr. Tony's guidelines range by refusing to group his obstruction convictions with his manslaughter conviction. That second increase was an error. Under Section 3D1.2C, a court is required to group offenses when one of them is treated as an adjustment to the other one. And here, the guidelines treat obstruction of justice as an adjustment to the offense that the defendant sought to prevent authorities from investigating or prosecuting. Does the obstruction of justice that the court relies on in sentencing have to be a crime that you've been convicted of or can it be conduct you weren't charged with or perhaps conduct you weren't convicted of? So if there are no obstruction convictions, yes, 3C1.1 can apply based on uncharged conduct. However, what the district court did here in not grouping the obstruction convictions with the underlying offense is squarely contrary to Application Note 8 to Section 3C1.1. And what that Application Note says is if you have a conviction for an obstruction offense and a conviction for the underlying offense, two things happen. You get a two-point increase to the underlying offense and then the obstruction conviction groups with the underlying offense. So the district court was required to do that. With respect to Application Note 8, though, what do you do with the fact that the language is framed singularly? And your argument is predicated on the notion essentially that there's no distinction between the grouping of obstruction counts, plural, and the grouping of a singular obstruction count. What do you do with that? So a couple of things. Application Note 8 is framed in the singular, but the obstruction counts are a singular offense for grouping purposes. And that's because the obstruction offenses group under 3D1.2B. So however many obstruction counts you have, if they're part of the same scheme, they group and become a single offense for grouping purposes. Well, that's not how Application Note 5 is framed. That's framed in terms of multiple counts of obstruction. And it treats them as multiple counts of obstruction for purposes of determining which one is grouped with the underlying count. So two things about Application Note 5. The example given in Application Note 5 is a defendant who commits a robbery and assaults two victims, right? So in that situation, there really are two instances of an aggravating factor, because the two assaults against different victims don't group. They don't become a single offense. So you have two aggravating factors. In the case of an obstructive scheme, the guidelines conceptualize an obstructive scheme as one thing. So you have one occurrence of an aggravating factor. But then there's another reason why Application Note 5 does not help the government. Before you jump there, refresh my recollection. Does Application Note 5 even use the word count? Let's see. I can tell you for sure. So what, yeah. So Application Note 5 says that there may be several counts, each one of which could be treated as an aggravating factor to another more serious count. But a couple of things. Singular or plurally? It's talking about plural because it's talking about the main offense and the aggravating offense, right? But here's another problem with the government's reliance on... Well, let's stick with your original problem. I mean, now that you've pulled up the language, and that's the language which I'm talking about, it's phrased in terms of several counts. Your argument conflates several counts into one group. That language doesn't talk about one group. It talks about several counts, and it tells you what to do when you have several counts. And what you do when you have several counts is what the court authorized, the Fourth Circuit authorized in Jones, which was you take the most serious count and you group that with the underlying offense. The key problem with the Fourth Circuit's opinion in Jones, and this is really important, is that it does not take into account 3D1.2B. Application Note 5 is an interpretation of 3D1.2C. So let's follow this out. If we say, all right, I don't agree with you on Application Note 5, only one obstruction count groups with the underlying offense under 3D1.2C. But the other obstruction offense has to group with that obstruction offense under 3D1.2B. Why would it have to do that? I mean, Jones walked through the analysis of what happens in exactly this situation. And the guidelines have to be read harmoniously. And so I don't know why something that's going on in Part B is going to trump what goes on in Part C. I mean, help me. Yeah, so in the guidelines Application Notes, it says, if the counts group under any of the grouping provisions, then they group. So what you're saying is, I'm looking at Application Note 5, and the obstruction convictions don't group together under subsection C. But they group together under subsection B. And the guidelines commentary says that you can form a single group through the successive application of several of the provisions. So here's how it goes. The obstruction convictions group together under subsection B. I don't think the government has made an argument that they don't group together under subsection B. Then at least one of those convictions has to group with the manslaughter under subsection B. But it has to group with the manslaughter while remaining grouped with the other obstruction offense. So we have a situation where offense A has to group with offense B. And offense B has to group with offense C. And it necessarily follows that offense A also has to group with offense C. And again, the guidelines explicitly contemplate that. It is in Application Note 6 to 3D1.2, quote, a single case may result in the application of several of the rules in this section. And thus, a group can be formed through the successive application of several. So the example in the Application Note involves two counts that first group together under subsection A. And then further group with another count under subsection D. And in going back to Jones, my recollection is that nowhere in that case did they even mention 3D1.2B. Is that correct? That's right. And that's the key error in Jones is the failure to account for that. And Judge Holmes, you talked about reading the guidelines harmoniously. And I think that this is a very harmonious reading of the guidelines because the guidelines under subsection B treat an obstructive scheme as one thing. Whereas Application Note 5 is about offenses that don't group. So Application Note 5, the example that they give is the defendant commits a robbery, assaults two separate victims. And the assault on two separate victims, that's the paradigmatic case of offenses that don't group. Let me ask you this because you've just used the word harmonious. And I've been playing with the question of the difficulty, the ambiguity of weaving these things together, which evidently other circuits have had the same problem. Have you thought about the question of leniency being applied here or that the sentencing commission needs to learn how to write in English? Number one, I do think that the rule of lenity weighs in my favor. But to be honest, I don't think that the tie goes to me under the rule of lenity, but I don't think you need to get there. But if we thought it was ambiguous, then it would be trumped with the rule of lenity. But you didn't argue your lenity. I was kind of surprised by that. Yeah, I just think that the guidelines are clear. If we don't think they're clear, can we rely on lenity even though you didn't argue it? I think you could, yes. Let me go back to your comment about application note eight. When I look at the language, it says if the defendant is convicted of both an obstruction offense and the count for the obstruction offense will be grouped, and then it talks about the notion of what you do with that. Well, the language that's used is offense. It's not group. I mean, I'm trying to follow in terms of how one, your phrase implies that every count, every offense, is essentially conflated into one. And the language of that provision does not suggest that that's what's at play at all. Two responses to that. First, in the guidelines introductory comment to chapter three, part D, which the guidelines actually tell you you need to look to this in deciding how to apply this. It says, quote, counts that are grouped together are treated as constituting a single offense for purposes of the guidelines. So it's not me conflating groups and offenses. It's the guidelines telling us that they are the same thing. And going back to the chief's question, the way I read that is that if I had 20 counts, all the same thing, and I'm convicted that the sentencing commission is not going to let me sentence you to 20 different sentences for the same, I'm not the same, but similar violence, you've got to group those. Is that right? Or is that wrong? That is right. And what the guidelines tell us is that when you group offenses, so once you group offenses to form a single group, they are treated. Let me get this language again. Counts that are grouped together are treated as constituting a single offense for purposes of the guidelines. And where are you reading that? That is the introductory commentary to Chapter 3, Part D, which again, the grouping rules tell us to look to that. But here's the other thing, Judge Holmes. Before you get to the back, tell me, as far as the two counts, the interference, I forgot exactly, the interference, I guess, those two counts, to me, read the same that he was charged and is guilty of. So if you don't group them, which one of those two counts is more severe? Yeah, I think you have to group them. This actually goes to what I wanted to say to Judge Holmes again. So look at Application Note 8. And what it says, let's read it the way that you're suggesting maybe it should be read. Ignore the rule that a group is a single offense. We can only group one of them under Application Note 8. You then have the problem of Subsection B, that the obstruction offenses have to group together. So you're forming a group for the successive application of multiple rules. Under your reading of Application Note 8, one of the obstruction offenses groups with the underlying offense under Subsection C. And then you continue forming the group through Subsection B, where the other obstruction offense has a group with that one. And that, again, goes back to what Judge Baldock says. Well, play that one out. What is wrong with that? I mean, if you had a situation in which the most serious offense is one that grouped with the underlying offense, the most serious witness tampering offense, groups with the underlying offense, and then you have the other obstruction. You only have, there were only two, right? And so there isn't going to be any worry about what happens to the other one. The other one stands, the other one that is not grouped, stands alone as part of, as a unique group. You can't do that because it's barred by Subsection B. Wait a minute, wait a minute. You've already accepted the premise that these are read harmoniously. So why would it be barred? If Subsection, if Application Note 5 says to do, and you're accepting for an assumption that it says to do that, at least as I understood you, you're working with my assumption. I'm not saying you concede that. But if you work with my assumption that as a result of Application Note 5, you're going to group the most serious witness tampering offense of two with the underlying offense, then you have one standing, right? Two points to this. The answer is no. Because Application Note 5 is only an interpretation of Subsection C. The guidelines say, you don't have to group under all of the rules. You have to group under any of the rules. And then they also say that a single group can be formed through the successive application of multiple rules. So the most serious obstruction offense, groups with the manslaughter, under Application Note 5 and Subsection C. But then you have to then apply Subsection B. The guidelines tell you, you have to successively apply the rules to determine whether a single group is formed. Subsection B would get you the grouping of the two tampering offenses. Why would that necessarily, since you're already getting an adjustment by grouping the one witness tampering offense, why would that necessarily require you to, if you're following the logic of what I said, why would that require you to then group these lone witness tampering offense with that group that you had already created? Because I mean, you've already, this item, this other witness tampering offense, would stand alone. It can't stand alone because Subsection B says it must be grouped with the other tampering offense. So if you say, I want this obstruction offense to stand alone, you can't do it because Subsection B says you can't do it. And so what I'm saying is that, so let's say that the less serious obstruction offense is A, the more serious one is B, and the underlying offense is C. Subsection B says A and B have to go together. And then Subsection C says B and C have to go together. And when you apply those in their totality, it all has to be included within a single group. And again, that's what Application Note 6 says to do. And is the question of whether the two A and B, I think you call them, should be grouped, is it even before us here? No, because the district court said that they group, and the government has not contested that ruling. So you can just assume that they group, because that was the ruling below, and the government has a challenge. So we would have to essentially ungroup them? I'm not aware of any principle ever that like something ungroups because it doesn't group in a separate section. The guidelines say, no, no, it only has to group under one section, not under every section. This is an issue of law. We're not bound by what the district court said is the way you go about interpreting the guidelines, are we? No, I 100% agree with you. Well, then what the district court did and whatever the government did, this is an issue of law. We're not bound by that. I agree. And under Subsection B, it says you group victimless crimes if the crimes harmed a closely related social interest and they involved a common scheme or plan. And Mr. Tony's obstruction offenses harmed closely related societal interests. As Judge Baldock said, it's really hard to tell them apart. And they were part of a common scheme or plan to avoid prosecution for the Garcia homicide. And so they have to group under Subsection B, and that's just the end of it. OK, we'll hear from you on the other side. Thank you. Good morning, Your Honors. May it please the court, Tiffany Walters for the United States. If I may, I'd like to jump straight into Mr. Tony's argument that this obstructive conduct is all one thing, and therefore it must be applied to the obstruction adjustment and cannot de-group or be divided into different counts or uncharged conduct. Well, now, I don't read it that way. So will you convince me how you read it that way? Well, I think there's two flaws with seeing it that way. To see it as all one thing. Well, if there are two, then there's a question of ambiguity then, right? I think there's two flaws, but I don't think that the guidelines themselves are ambiguous. To directly address the ambiguity question, I would like to point out that I'm No, you go ahead. I just wanted to see where you were, because I don't quite read it that way. And you need to convince me why I needed to read it your way. Understood. Judge Baldock, there's two problems. And the first I'd like to point out is that treating it all as one entity, all the obstructive conduct is one thing, it's problematic because 3D 1.2 groups counts, not conduct. So the uncharged conduct never grouped. It's not a count. It doesn't apply to the rules under 3D 1.2. But we have three counts. We have two, well, the manslaughter and two obstruction counts. So setting aside the issue of uncharged conduct, there's a separate problem. And that's an order of operations problem. The guidelines set forth the order in which the district court applies the guidelines to create these different offense levels and then the ultimate guideline range. And so going back to 1B 1.1, which sets forth the order of operations, this is what the guidelines tell the district court to do. First, determine which guideline is applicable. Then the court looks to determine the base offense level and apply any appropriate specific offense characteristics. The third step is to apply any adjustments. And 1B 1.1 specifically mentions the obstruction adjustment at step three. And then step four, if there are multiple counts, repeat steps one to three for each count and then reach grouping. So the problem with saying that the obstruction counts are all one group is that the grouping doesn't occur until after the adjustment for obstruction has been applied. Well, the obstruction for objustice is two separate counts. And I read that to say that if you've got the underlying defense, that's one count. But it's the more severe count. You take those two obstructions and you group that with the more severe. So why is that not right? I think application note five provides the answer to that question, Judge Valdoc. And so there, if we have multiple obstruction counts in addition to the underlying count, which is the manslaughter count in this offense. So the guidelines recognize sometimes there may be several accounts, each of which could be an aggravating factor to another more serious count. So here, either one of those obstruction counts could serve for the obstruction adjustment under 3C 1.1. Let me, let me, I'm sorry, go ahead. I was going to say, unless they're grouped. Unless they're grouped. Unless they're now one count. Correct. But at the time that you're applying the adjustment, there's no groups yet. So the court's looking at the adjustment, applying the adjustment based on either charged or uncharged obstructive conduct. Once it reaches an offense level for each individual count, it then proceeds to 3D 1.2, and it groups the accounts. Let me, let me follow your order of operations analysis and then ask a specific question as it relates to application note five. OK, under your view of the order of operations, the obstruction enhancement takes place before there are groups. OK, so it takes place. Then at that juncture, the question is still, what do you do with the remaining obstruction counts as apart from the notion of the enhancement? And so walk me through what your theory is of what we do with the remaining counts. Do we, one, view them as being effectively one offense and grouped? Or does application note five have any role to play in terms of how you treat those counts? I believe application note five answers that question. And I'd like to turn to the specific language of application note five. Please do, and explain to me and respond to the argument that application note five really does not have any purchase here, per se, as it relates to the question of choosing between the two witness tampering counts. Because application note five did not involve the grouping of the counts in its example. Correct. So it's true that the assault example provided in application note five, those are assault, they're victim-based crimes, they wouldn't group. That isn't the example. It's just the example. So for a second, let's step away from the example and actually look at what the text of note five says beyond the example. Well, I mean, the example is supposed to help us understand what the point of the note is. And I mean, it is important that they gave an example where it's patently obvious you couldn't group. Correct, but if the note wanted to say that this only applies where the counts are not otherwise groupable under 3D 1.2, the application note could have said that easily. So I'd like to turn to the language of the application note itself beyond the example. And that is, sometimes there may be several counts, each of which could be treated as an aggravating factor to another more serious count. But the guideline for the more serious count provides an adjustment for only one occurrence of that factor. We're in this land here because either one of the obstruction counts could satisfy the obstruction adjustment. So then it goes on. In such cases, only the count representing the most serious of those factors is to be grouped with the other count. OK. That's very specific. Which is the more serious of the two counts? They're both the same. The district court would need to make a factual finding on that. I mean, that would. We're here on a question. Which of the two is more egregious? They're exactly the same count. And in that case, I'm not sure that it would matter which grouped and which didn't. Because whichever count doesn't group would still get the 0.5 for the second group. The guideline calculation would remain the same, regardless of which count grouped in this case. And so it doesn't actually make an effect in this case. And ultimately, it'd be a factual question. I mean, I think in the court in Jones, it looked at the effect for the witness tampering on what harm was inflicted or the conduct that was engaged with each witness. Here we have both the witnesses, the girlfriend and nephew, in both counts. And so it's really a question of, is it more severe to tamper with their testimony? Or is it more severe to tamper with the investigation? Let me turn you back to where you stopped reading. Because again, it says, for example, if you have a robbery of a credit union on a military base and you assault two employees, one of whom is injured seriously, again, the example that is being used, you can't group. They're two separate victims. One is injured more seriously than the other. Our case, our facts, don't really fit very well into the examples of Note 5. I think that's fair. They don't fit directly into the example. But they do fit into the rest of the language of Note 5. And Note 5 is not specific to the only counts that wouldn't otherwise group. There's nothing in the language to say that this example is limiting, that it only applies to victim-based counts. But you also have another guideline that tells us that you should group these two counts, right? Right. Yes, I mean, granted, we took a different position for the district court, but we're not challenging that on appeal. So accepting the district court's analysis, the obstruction counts would group, otherwise group under B. The obstruction counts would group. And once they've grouped, your argument is, you kind of make a counterfactual argument that what the district court could have done was group them and then ungroup them. That's your argument in the brief, right? I don't think so. What the district court did was that it grouped the uncharged obstructive conduct here. As I read your brief, you make two arguments. One is that what the district court actually did was it looked at the uncharged conduct, which we really haven't focused on this morning. And you make a different argument, as I read it, that says, and the court could have grouped them and then ungrouped them. No? That's not an argument you're making? I think the court can consider them separately under note 5. I think the de-grouping language is more of appellant's language, and I would agree that there's no concept of de-grouping. But I don't think we need to reach that, because there is no group at the point of interest. Well, let me follow along, then, on at least where I thought you were going as it relates to note 5. If we do end up grouping one of the witness tampering counts, what your opposing counsel said is that, well, the other witness tampering count can't stand alone, just by definition cannot, because of subsection B. So is that right? I mean, and if that's true, what's the difference between grouping it at the beginning or grouping it later? I would point the court to note 5 again, which specifically says when you have the several counts, only the count representing the most serious harm groups. No, I think that's more specific than B. OK, yeah. All right, so what you're saying is that, if I understand you correctly, that by virtue of application note 5, the sort of general principles reflected in B would not have swayed here. Correct. The application of 5 is a more specific note that applies specifically to this situation. OK, why don't you spend a minute talking about, or less, spend some time talking about harmless error and make clear to me why, even if the district court managed to err in this maze of grouping, that there would be no harm. So yes, I'll address that now. If the court erred by relying on the uncharged conduct, then it's harmless because, alternatively, the district court could have relied under note 5 on one count of obstruction for the obstruction adjustment. The other count of obstruction would be treated separately. So in that situation, you'd have two groups, one with the manslaughter and one obstruction, one with the other obstruction. Regardless of which group, which obstruction count is treated more seriously, the other obstruction count would be assessed 0.5, and then under the grouping table, it would add one point. So you would still end up with an offense level of 32, which is exactly what the district court calculated in this case, and so the guideline range is the same. And that's predicated on the notion that the error is the using of the uncharged conduct. Correct. Correct.  Is there a scenario where, even if the error went beyond the use of the uncharged conduct and not doing what the defendant said, in other words, not grouping all of the obstruction counts, I guess as opposed to the uncharged conduct, district court errors by grouping the uncharged conduct, and it should have grouped all of the obstruction counts. Under that scenario, if that's the configuration of the error, is it still harmless? No, we're not raising a harmless error argument in that situation. So if all of the counts should have grouped into one group, then the offense level would have been 31. There would have been a different guideline range. Our harmless error analysis is more limited than that. Then counsel, along those lines for me, so that I don't miss anything, I would like just a minute to discuss with you about the question of leniency in regards to this. You all have brought a really interesting case. I just wish I still knew how to diagram a sentence. But why wouldn't leniency apply in this case with the ambiguity that I read in regards to it? Thank you for that question, Judge Baldock. First, because appellant hasn't raised it in any of the briefing, and it's been raised for the first time on appeal, so it's waived. It's a rule of construction. And I think we have case law that says you don't waive rules of construction. I mean, when we go through all our analysis, and at the end, we throw up our hands and say, we don't know, defendant wins. And even if it's not waived, I think it doesn't apply in this case, because the rule of lenity is limited to situations where the ambiguity is grievous, where there's no direction in which the court should proceed. And here, we do have application note 5 that provides direction. And the Fourth Circuit's decision in Jones was able to look at the application notes. But I don't know how Jones helps us, because nobody even argued B to Jones. I mean, the Jones court didn't have what we have, which the defendant is coming in and saying, we've got these two conflicting provisions. All Jones did was apply one section. I appreciate that. I think at that point, we looked in note 5 to that second sentence that says, only the count representing the most serious of those factors is to be grouped with the other count. And that provides direction that allows the court to interpret it and avoid application of the rule of lenity. And if there's no further questions, we'd ask. I actually do have a further question. What about the decision to rely on uncharged conduct? Let's say you properly grouped, so you have one obstruction charge. But then the court chooses not to rely on that, but to rely on uncharged conduct. Can you point us to anything in the guidelines that talk about the use of uncharged conduct in the grouping context? The guidelines are silent on that question. I would point the court to the Seventh Circuit decision in Chauvin. And I see that my time has expired. If there's a further questions, I'd ask the court to affirm. Thank you. Thank you. I think that you had adequate time on the other side, and so the case is submitted. Thank you for a very fine argument.